# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| ABITIBIBOWATER, INC., *et al.*, | : | Case No. 09-11296 (KJC) |
| Reorganized Debtors. | : | (Jointly Administered) |
| | : | |
| THE CLAIMS AGENT FOR THE CHAPTER 11 ESTATES OF ABITIBIBOWATER, INC., *et al.*, | : | |
| Plaintiff, | : | |
| v. | : | Adv. Pro. No. 11-51671 (KJC) |
| MEDITERRANEAN SHIPPING CO., MEDITERRANEAN SHIPPING, AND MEDITERRANEAN SHIPPING COMPANY, S.A., | : | |
| Defendants. | : | |

## MEDITERRANEAN SHIPPING CO., MEDITERRANEAN SHIPPING AND MEDITERRANEAN SHIPPING COMPANY, S.A., OPENING BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS THE COMPLAINT PURSUANT TO FEDERAL RULE OF BANKRUPTCY RULE 7012 AND FEDERAL RULE OF CIVIL PROCEDURE RULE 12(b)(6)

Dated: May 17, 2011
    Wilmington, Delaware

**CIARDI CIARDI & ASTIN**
Daniel K. Astin (No. 4068)
Joseph J. McMahon, Jr. (No. 4819)
919 N. Market St., Suite 700
Wilmington, DE 19801
Tel: (302) 658-1100
Fax: (302) 658-1300
dastin@ciardilaw.com
jmcmahon@ciardilaw.com

and

Rick A. Steinberg, Esq. (RS-7396)
(Admission *pro hac vice* pending)
100 Church Street, 8th Floor
New York, New York 10007
Tel: (646) 485-0605
Fax: (646) 688-4385
rsteinberg@ciardilaw.com

*Counsel for Defendants Mediterranean Shipping Co., et al*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................. iii

PRELIMINARY STATEMENT .................................................................................... 1

SUMMARY OF ARGUMENT ...................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 3

ARGUMENT ................................................................................................................. 5

I.      THE FIRST CAUSE OF ACTION OF THE COMPLAINT MUST BE
DISMISSED PURSUANT TO CIVIL RULE 12(b)(6) BECAUSE THE
PLAINTIFF FAILED TO ESTABLISH ANY CLAIMS UPON WHICH RELIEF
CAN BE GRANTED ............................................................................................. 6

       A.     PLAINTIFF CANNOT MEET ITS BURDEN THAT THE ALLEGED
TRANSFERS ARE PREFERENTIAL TRANSFERS ............................................. 7

              1.     The Alleged Transfers Were not Made for or on Account of an Antecedent
Debt Owed By the Debtor Before Such Transfers Were Made ................... 8

              2.     The Complaint Fails to Identify the Amount and Nature of the Antecedent
Debt ......................................................................................................... 8

              3.     MSC Was Fully Secured at the Time of the Alleged Transfers ................. 9

                    A.     The Cargo Was Secured by Contractual Liens ............................... 10

                    B.     The Cargo Was Secured By Maritime Liens ................................. 11

              4.     The Release of Liens in Exchange for the Alleged Transfers Were
Contemporaneous Exchanges for New Value ........................................... 12

II.     THE SECOND CAUSE OF ACTION FAILS BECAUSE THE DEBTORS
RECEIVED REASONABLY EQUIVALENT VALUE FOR THE ALLEGED
TRANSFERS ...................................................................................................... 14

III.    THE THIRD CAUSE OF ACTION FAILS BECAUSE THERE IS NO
ALLEGATION OF ANY POST-PETITION TRANSFERS ............................................. 14

IV.   THE FOURTH CAUSE OF ACTION FAILS BECAUSE PLAINTIFF HAS NOT
ESTABLISHED AN UNDERLYING AVOIDABLE TRANSFER ................................. 14

V.    THE FIFTH CAUSE OF ACTION FAILS BECAUSE PLAINTIFF HAS NOT
ESTABLISHED AN AVOIDABLE TRANSFER THAT WOULD FORM THE
BASIS TO DISALLOW ANY CLAIMS ............................................................... 14

VI.    THE SIXTH CAUSE OF ACTION FAILS BECAUSE PLAINTIFF HAS NOT
ESTABLISHED AN AVOIDABLE TRANSFER THAT WOULD FORM THE
BASIS FOR SETOFF OR RECOUPMENT ....................................................................15

RESERVATION OF RIGHTS ......................................................................................................15

CONCLUSION..............................................................................................................................16

# TABLE OF AUTHORITIES

**Cases**

*Atlantic Richfield Co. v. Good Hope Refineries, Inc.*,
  604 F.2d 865 (5th Cir. 1979) ...................................................................12

*Batlan v. Transamerica Commercial Fin. Corp. (In re Smith's Home Furnishings, Inc.)*,
  265 F.3d 959 (9th Cir. 2001) .....................................................................9

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................6

*Cortec Indus., Inc. v. Sum Holding L.P.*,
  949 F.2d 42 (2d Cir. 1991) ......................................................................6, 7

*Davis v. Smokeless Fuel Co.*, 196 F. 753 (2d Cir. 1912)...............................11

*Grand Union Co. v. Cord Meyer Dev. Corp.*,
  735 F.2d 714 (2d Cir. 1984) .......................................................................6

*Hawgood v. 1310 Tons of Coal*,
  21 F. Supp. 681 (E.D. Wis. 1884) .............................................................11

*In re New York, N.H. & H.R. Co.*,
  17 F. Supp. 488 (D. Conn. 1936)..............................................................11

*In re Wedtech Corp.*,
  165 B.R. 140 (Bankr. S.D.N.Y. 1994)........................................................14

*Kost v. Kozakiewicz*,
  1 F.3d 176 (3d Cir. 1993) ...........................................................................6

*Lease-A-Fleet, Inc. v. Wolk (In re Lease-A-Fleet, Inc.)*,
  151 B.R. 341 (Bankr. E.D. Pa. 1993) .......................................................10

*Lewis v. Diethorn*,
  893 F.2d 648 (3d Cir. 1990) .....................................................................13

*Mellon Bank, N.A. v. Metro Communications, Inc.*, 945 F.2d 635 (3d Cir. 1991) .......................10

*Official Comm. of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Capital
  Partners, LLC (In re Radnor Holdings Corp.In re Radnor Holdings Corp.*,
  353 B.R. 820 (Bankr. D. Del. 2006) ...........................................................9

*Official Unsecured Creditors Comm. of Sufolla, Inc. v. U.S. Nat'l Bank (In re Suffola, Inc.)*,
  2 F.3d 977 (9th Cir. 1993) ........................................................................15

*Osaka Shosen Kaisha v. Pac. Exp. Lumber Co.,*
    260 U.S. 490 (1923)................................................................................................11

*Pardo v. Gonzaba (In re APF Co.),*
    308 B.R. 183 (Bankr. D. Del. 2004)........................................................................8

*Pardo v. NYLCare Health Plans, Inc. (In re APF Co.),*
    274 B.R. 408 (D. Del. 2001)....................................................................................6

*Paul Harris Stores, Inc. v. Expeditors Int'l of Wash., Inc. (In re Paul Harris Stores, Inc.),*
    342 B.R. 290 (Bankr. S.D. Ind. 2006)....................................................................9

*Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,*
    998 F.2d 1192 (3d Cir. 1993)..............................................................................6, 7

*Savage & Associates, P.C. v. County of Fairfax (In re Teligent Servs., Inc.),*
    2009 U.S. Dist. LEXIS 61590 (S.D.N.Y. July 16, 2009).......................................9

*The Bird of Paradise,*
    72 U.S. (5 Wall.), 545 (1866)................................................................................12

*The Hyperion's Cargo,*
    12 F. Cas. 6,987 (2 Lowell) 93 (D. Mass. 1871)..................................................11

*Valley Media, Inc. v. Borders, Inc. (In re Valley Media),*
    288 B.R. 189 (Bankr. D. Del. 2003)........................................................................8

**Statutes**

11 U.S.C. § 547(c)(1) ................................................................................................13

46 U.S.C. § 31342......................................................................................................11

Federal Bills of Lading Act,
    49 U.S.C. §§ 80101 *et seq.* ....................................................................................12

**Rules**

FED. R. BANKR. P. 7012(b) ..........................................................................................6

FED. R. CIV. P. 12(b)(6) ..............................................................................................6

## PRELIMINARY STATEMENT

On April 1, 2011, the plaintiff (the "Plaintiff") filed an Amended Complaint to (A) Avoid Transfers Pursuant to Bankruptcy Code Sections 502(d), 547, 548 and 549, and (B) Recover Property Transferred Pursuant to Bankruptcy Code Section 550 (the "Complaint") in the instant adversary proceeding (the "Adversary Proceeding") seeking the return of $2,817,327.39 in allegedly preferential and/or fraudulent transfers and/or unauthorized post-petition transfers (the "Alleged Transfers") pursuant to sections 547, 548, 549 and 550 of title 11 of the United States Code (the "Bankruptcy Code").

Mediterranean Shipping Co., Mediterranean Shipping, and Mediterranean Shipping Company S.A. (collectively, "MSC" or the "Defendants") hereby move to dismiss the Complaint (the "Motion") pursuant to Federal Rule of Bankruptcy Procedure 7012 (the "Bankruptcy Rule[s]") and Rule 12(b)(6) of the Federal Rules of Civil Procedure (the "Civil Rule[s]").

## SUMMARY OF ARGUMENT

This Court should dismiss the First Cause of Action of the Complaint pursuant to Civil Rule 12(b)(6) because of the Plaintiff's failure to satisfy the pleading requirements established by this Court with regard to preference actions. In the Complaint, the Plaintiff fails to identify the antecedent debt relevant to any of the alleged preferential transfers. Plaintiff merely formulaically recites the elements of the preference cause of action in the First Cause of Action, which is insufficient to plead a claim upon which relief can be granted. Indeed, the Alleged Transfers were not made on account of an antecedent debt; to the contrary, they were prepayments for shipping services provided by MSC.

Further, this Court should dismiss the First Cause of Action of the Complaint because the Plaintiff has not established, as is required by section 547(b)(5) of the Bankruptcy Code, that MSC's receipt of the Alleged Transfers enabled MSC to receive more than it would receive if:

(a) these cases were cases under chapter 7 of the Bankruptcy Code, (b) the Alleged Transfers had not been made, and (c) MSC received payment of its debt to the extent provided by the provisions of the Bankruptcy Code. As set forth in more detail herein, the cargo delivered to the Debtors for which the Alleged Transfers were made (collectively, the "Cargo") was secured by both contractual and maritime liens. Absent payment of the Alleged Transfers, MSC would not have released the Cargo to the above-captioned debtors (the "Debtors") and would have maintained secured liens on the Cargo. Accordingly, given that the Cargo was secured by contractual and maritime liens, the Plaintiff cannot establish its *prima facie* case, the Alleged Transfers cannot be deemed preferential, and the First Cause of Action of the Complaint must be dismissed.

Notwithstanding the secured liens on the Cargo, if the Court determines that the Plaintiff met its burden under section 547(b)(5) of the Bankruptcy Code with respect to the First Cause of Action, the count must nonetheless be dismissed because MSC has a complete contemporaneous exchange for new value defense pursuant to section 547(c)(1) of the Bankruptcy Code. The Debtors' payment caused the simultaneous release of the contractual and possessory maritime liens on the Cargo. A release of the liens constitutes a contemporaneous exchange of new value under section 547(c)(1) of the Bankruptcy Code, and dismissal of the First Cause of Action is warranted.

MSC seeks dismissal of the Second Cause of Action for any constructively fraudulent transfers pursuant to Bankruptcy Code Section 548 because the Debtors received reasonably equivalent value for the Alleged Transfers.

MSC seeks dismissal of the Third Cause of Action for any unauthorized post-petition transfers pursuant to Bankruptcy Code Section 549 because the Complaint fails to allege that any of the Alleged Transfers were made post-petition.

MSC seeks dismissal of the Fourth Cause of Action to recover any avoided transfers pursuant to Bankruptcy Code Section 550 because none of the Alleged Transfers are avoidable.

MSC seeks dismissal of the Fifth Cause of Action to disallow claims pursuant to section 502 of the Bankruptcy Code because, even assuming, *arguendo*, that MSC has any claims against the Debtors' estates, there are no avoidable transfers.

MSC seeks dismissal of the Sixth Cause of Action for Setoff and Recoupment because MSC does not owe any debt to the Debtors, since none of the transfers are avoidable.

## STATEMENT OF FACTS

MSC is an ocean common carrier shipping company that loads containerized cargo in foreign ports for delivery to destinations in the United States and abroad. MSC also loads containerized cargo in United States ports for delivery to destinations abroad. MSC has no offices or employees in the United States. Therefore, all of its transportation in the United States is handled by Mediterranean Shipping Company (USA) Inc. ("MSC (USA)") or a sub-agent of MSC (USA). As agent for MSC, MSC (USA) or a foreign agent/office of MSC issues MSC standard bills of lading for the containerized cargo. The containerized cargo remains in MSC's possession while it is transported.

The Alleged Transfers made by the Debtors to MSC were in payment of shipping and demurrage costs with respect to the Cargo shipped by or to the Debtors pursuant to one or more service contracts entered into by the Debtors (the "Service Contract"). Pursuant to the Service Contract, the Debtors agreed to the standard form of MSC ocean bill of lading terms and conditions, including all governing tariffs and Federal Maritime Regulations. MSC's Tariff

Rules Listing, which is published with the Federal Maritime Commission, includes the standard terms and conditions of its bill of lading form.

The Debtors entered into the Service Contract for shipment of goods that they ordered as cargo owner or consignee. Upon receipt of the Cargo overseas or during the course of the voyages, ocean bills of lading were issued on MSC's standard forms. The bills of lading issued with respect to the shipment of the Cargo all incorporate and refer to the Service Contract. The ocean transportation contract is founded on the bills of lading, while the published tariffs and the service contracts establish rules and charges as required to be published and applied by the Shipping Act of 1984, as amended, 46 U.S.C. § 1701 *et seq.* (the "Shipping Act"). The applicable terms, rates and charges are specified in a service contract filed with the Federal Maritime Commission as required by the Shipping Act.

The bills of lading issued for the Cargo of relevance to this action (collectively, the "Bills of Lading") provide for terms and conditions that govern the transport of the Cargo to or for the Debtors. A true and correct copy of each of the Bills of Lading is attached hereto as Exhibit A. The Bills of Lading provide on the front side that: "IN ACCEPTING THIS BILL OF LADING THE MERCHANT EXPRESSLY ACCEPTS AND AGREES TO ALL THE TERMS AND CONDITIONS, WHETHER PRINTED, STAMPED OR OTHERWISE INCORPORATED ON THIS SIDE AND ON THE REVERS SIDE OF THIS BILL OF LADING AND THE TERMS AND CONDITIONS OF THE CARRIER'S APPLICABLE TARIFF AS IF THEY WERE ALL SIGNED BY THE MERCHANT."

Section 17 of the MSC standard form bill of lading, entitled the "MSC Mediterranean Shipping Company S.A. Contract of Carriage" (the "Standard Bill of Lading") places a

contractual lien on the Cargo until final payment is made. This section, entitled **CARRIER'S LIEN**, provides as follows:

> The Carrier, its servants or agents shall have a lien on the Goods and any document relating thereto for Freight and for general average contributions to whomsoever due. The Carrier, its servants or agents shall also have a lien against the Merchant[1] on the Goods and any document relating thereto for all sums due from the Merchant to the Carrier under any other contract. The Carrier may exercise its lien at any time and any place in its sole discretion, through the action of any servant, agent or Subcontractor, whether the contractual carriage is completed or not. The Carrier's Lien shall also extend to cover the cost and legal expense of recovering any sums due. The Carrier shall have the right to sell any Goods liened by public auction or private treaty, without notice to the Merchant. Nothing herein shall prevent the Carrier from recovering from the Merchant the difference between the amount due to the Carrier and the net amount realized by such sale.

*See* copy of the Standard Bill of Lading, attached hereto as Exhibit B. Accordingly, the Bills of Lading place contractual liens upon the Cargo which survive delivery.

## ARGUMENT

This Court should dismiss the First Cause of Action of the Adversary Proceeding because the Plaintiff cannot establish its *prima facie* case. The Plaintiff cannot establish the requirements of section 547(b)(5) of the Bankruptcy Code because the transfers were not made for or on account of an antecedent debt, by virtue of MSC's status as a secured creditor, and MSC has a complete affirmative defense to the preferential count of the Complaint. Accordingly, the First Cause of Action must be dismissed.

---

[1] The Standard Bill of Lading defines "Merchant" as the "shipper, consignee, holder of this Bill of Lading, the receiver of the Goods and any Person owning, entitled to or claiming the possession of the Goods or of this Bill of Lading or anyone acting on behalf of this person." *See* Standard Bill of Lading, section 1.

## I. THE FIRST CAUSE OF ACTION OF THE COMPLAINT MUST BE DISMISSED PURSUANT TO CIVIL RULE 12(b)(6) BECAUSE THE PLAINTIFF FAILED TO ESTABLISH ANY CLAIMS UPON WHICH RELIEF CAN BE GRANTED

Civil Rule 12(b)(6) enables a defendant to move to dismiss a complaint on the ground that the complaint fails to state a claim upon which relief may be granted in a plaintiff's favor. FED. R. CIV. P. 12(b)(6); FED. R. BANKR. P. 7012(b). A motion to dismiss for failure to state a claim "serves to test the sufficiency of the complaint." *See Pardo v. NYLCare Health Plans, Inc. (In re APF Co.)*, 274 B.R. 408, 414 (D. Del. 2001) (citing *Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993); *Grand Union Co. v. Cord Meyer Dev. Corp.*, 735 F.2d 714, fn. 1 (2d Cir. 1984). The United States Supreme Court recently clarified that the facts, as plead, must be "plausible;" thus demonstrating entitlement to the relief requested. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). Accordingly, it is no longer enough to allege bare elements of a cause of action; instead, "a complaint must allege facts suggestive of [the proscribed] conduct." *Id.*

The Second Circuit has held that on a motion to dismiss under Civil Rule 12(b)(6), "when a plaintiff chooses not to attach to the complaint or incorporate by reference a prospectus upon which it solely relies and which is integral to the complaint, the defendant may produce the prospectus when attacking the complaint for its failure to state a claim, because plaintiff should not so easily be allowed to escape the consequences of its own failure." *Cortec Indus., Inc. v. Sum Holding L.P.,* 949 F.2d 42, 47 (2d Cir. 1991); *see also Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document .... Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied").

6

Consideration of documents that form a part of the documentation for transactions on which the claims are based does not convert a motion to dismiss to a motion for summary judgment because "the plaintiff obviously is on notice of the contents of the document, and the need for a chance to refute the evidence is greatly diminished." *White Consol. Indus., Inc.*, 998 F.2d at 1197-97; *see also Cortec Indus.*, 949 F.2d at 47. Accordingly, a complaint should be dismissed when the documentary evidence conclusively establishes a defense. *See Cortec Indus.*, 949 at 47. Here, Plaintiff's claim depends on the Standard Bill of Lading since it evinces the contract between the parties, and therefore all provisions of the Standard Bill of Lading are proper subjects for this Motion.

B. **PLAINTIFF CANNOT MEET ITS BURDEN THAT THE ALLEGED TRANSFERS ARE PREFERENTIAL TRANSFERS**

Section 547(b) of the Bankruptcy Code sets forth the elements that must be established for a plaintiff to prove a preferential transfer as follows:

> (b) Except as provided in subsections (c) and (i) of this section, the trustee may avoid any transfer of an interest of the debtor in property—
>
> (1) to or for the benefit of a creditor;
>
> (2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
>
> (3) made while the debtor was insolvent;
>
> (4) made—
>
> (A) on or within 90 days before the date of the filing of the petition; or
>
> (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>
> (5) that enables such creditor to receive more than such creditor would receive if—
>
> (A) the case were a case under chapter 7 of this title;
>
> (B) the transfer had not been made; and

(C) such creditor received payment of such debt to the
extent provided by the provisions of this title.

11 U.S.C. § 547(b).

**1. The Alleged Transfers Were not Made for or on Account of an Antecedent Debt Owed By the Debtor Before Such Transfers Were Made**

The First Cause of Action of the Complaint undeniably fails, given that none of the

Alleged Transfers were made on account of an antecedent debt.  For each payment listed on

Exhibit A to the Complaint, the shipment of cargo paid for by such payment was delivered to the

Debtors after such payment was made.  As such, each payment was made prior to the delivery of

the relevant cargo to the Debtors.  Accordingly, none of these payments was made "for or on

account of an antecedent debt owed by the debtor before such transfer was made," and therefore

the payments cannot be deemed preferential.  11 U.S.C. § 547(b)(2).

**2. The Complaint Fails to Identify the Amount and Nature of the Antecedent Debt**

Additionally, the First Cause of Action fails because the amount and nature of the alleged

antecedent debt was not sufficiently pled.  Civil Rule 8 requires "a short and plain statement of

the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2).  Several factors

must be included in a preference action to satisfy the pleading standards set forth in Civil Rule 8.

These factors include: (a) identification of the nature and amount of each antecedent debt and (b)

identification of each alleged preferential transfer by: (i) date; (ii) name of debtor/transferor; (iii)

name of transferee; and, (iv) the amount of the transfer.  *Pardo v. Gonzaba (In re APF Co.)*, 308

B.R. 183, 188 (Bankr. D. Del. 2004) (citing *Valley Media, Inc. v. Borders, Inc. (In re Valley

Media)*, 288 B.R. 189, 192 (Bankr. D. Del. 2003)).

The Complaint falls short of the requirements of Civil Rule 8 because the Plaintiff failed

to identify the amount and nature of the antecedent debt.  Instead, the Plaintiff simply made the

statutory averment that "[t]he Transfers were made for or on account of antecedent debts owed to the Defendants by one or more of the Debtors before such Transfers were made." *See* Compl. ¶ 22. The Plaintiff's mere recitation of the statute does not meet applicable pleading requirements. As such, this Court should dismiss the preference count of the Complaint.

### 3. MSC Was Fully Secured at the Time of the Alleged Transfers

Section 547(b)(5) of the Bankruptcy Code requires that a recipient of preferential transfers receive more than they would have received if: (a) these cases were cases under chapter 7 of the Bankruptcy Code, (b) the Alleged Transfers had not been made, and (c) MSC received payment of its debt to the extent provided by the provisions of the Bankruptcy Code. *Id.* Because MSC was a secured creditor at the time the Alleged Transfers were made, Plaintiff cannot establish the foregoing. *See Savage & Associates, P.C. v. County of Fairfax (In re Teligent Servs., Inc.),* 2009 U.S. Dist. LEXIS 61590, at *10 (S.D.N.Y. July 16, 2009); *see also Paul Harris Stores, Inc. v. Expeditors Int'l of Wash., Inc. (In re Paul Harris Stores, Inc.),* 342 B.R. 290 (Bankr. S.D. Ind. 2006); *Official Comm. Of Unsecured Creditors of Radnor Holdings Corp. v. Tennenbaum Capital Partners, LLC (In re Radnor Holdings Corp.),* 353 B.R. 820, 846 (Bankr. D. Del. 2006) *(citing Batlan v. Transamerica Commercial Fin. Corp. (In re Smith's Home Furnishings, Inc.),* 265 F.3d 959, 963-964 (9th Cir. 2001) (stating that transfers to fully-secured creditors are generally not preferential because fully-secured creditors are entitled to receive 100 percent of their claims in a liquidation)). In this case, the transfers were made in satisfaction of fully-secured claims that were subject to either (or both) contractual security interests or maritime liens. When a creditor clearly asserts that it is secured, it is the Plaintiff's burden to prove otherwise to defeat the defense asserted here. *See Savage,* 2009 U.S. Dist. LEXIS 61590, at *10; *Lease-A-Fleet, Inc. v. Wolk (In re Lease-A-Fleet, Inc.),* 151 B.R. 341, 348

(Bankr. E.D. Pa. 1993) (section 547(g) of the Bankruptcy Code requires a plaintiff to prove a negative when establishing section 547(c)(5)); *see also Mellon Bank, N.A. v. Metro Communications, Inc.,* 945 F.2d 635, 641-44 (3d Cir. 1991).

## A. The Cargo Was Secured by Contractual Liens

Under the terms of the attached Bills of Lading and the Standard Bills of Lading, MSC controlled a lien on the Cargo for freight, demurrage, and other charges. As mentioned above, the Bills of Lading incorporate the terms of the Standard Bill of Lading, which specifically provide for "a lien on the Goods ... for Freight and for general average contributions to whomsoever due." *See* Standard Bill of Lading, § 17. "Freight" is defined to include "the freight and all charges, costs and expenses whatsoever payable to the Carrier in accordance with the applicable Tariff and this Bill of Lading, including storage, per diem and demurrage." *See* Standard Bill of Lading, Section 1. The parties contracted for liens on the Cargo to exist through the receipt of payment for the Cargo and for the costs associated with the carriage and delivery of the Cargo.

In this case, the Debtors cannot demonstrate that the Alleged Transfers allowed MSC to receive more than it would have received if the payments were not made and MSC was paid through the administration of a liquidation pursuant to chapter 7 of the Bankruptcy Code. On the contrary, in a chapter 7 case, MSC would have possessed the Cargo and would have a valid lien that would need to be satisfied prior to the release of the Cargo. MSC would have to have been paid in full before the chapter 7 trustee would be afforded the opportunity to liquidate the Cargo for the benefit of other creditors. Accordingly, with its contractual rights under the Bill of Lading and related documents, MSC would have received the same payment in a chapter 7

liquidation as it received with the Alleged Transfers. Therefore, the First Cause of Action of the Complaint must be dismissed for failure to state a claim under 11 U.S.C. 547(b).

**B.    The Cargo Was Secured By Maritime Liens**

Just as the Cargo was secured by the above contractual liens, the Cargo was also secured by a possessory maritime lien pursuant to 46 U.S.C. § 31342, which is part of the Federal Maritime Lien Act. In determining the existence and extent of a maritime lienor's secured claim in bankruptcy, the bankruptcy court will apply maritime law because the Bankruptcy Code contains no provision governing the recognition and relative priorities of secured claims. *See In re New York, N.H. & H.R. Co.*, 17 F. Supp. 488 (D. Conn. 1936). By virtue of the possessory maritime lien held on the Cargo, each of the Alleged Transfers is secured and, therefore, not preferential. 46 U.S.C. § 31342 provides as follows:

> (a) Except as provided in subsection (b) of this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner -
>> (1) has a maritime lien on the vessel;
>> (2) may bring a civil action *in rem* to enforce the lien; and
>> (3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342.

Under the well-established general maritime law of the United States, ocean carriers have a right to retain possession of goods until freight has been paid, for hire, for demurrage and for other charges arising out of the contract of carriage. *Osaka Shosen Kaisha v. Pac. Exp. Lumber Co.*, 260 U.S. 490 (1923) (freight); *Davis v. Smokeless Fuel Co.*, 196 F. 753 (2d Cir. 1912) (demurrage); *The Hyperion's Cargo*, 12 F. Cas. 6,987 (2 Lowell) 93 (D. Mass. 1871); *Hawgood v. 1310 Tons of Coal*, 21 F. Supp. 681 (E.D. Wis. 1884) (the absence of a demurrage clause in

the bill of lading will not prevent a lien from attaching to the cargo for freight and demurrage).

The ship owner's lien also extends to demurrage.

In *Atlantic Richfield Co. v. Good Hope Refineries, Inc.*, 604 F.2d 865, 872 (5th Cir. 1979), the Fifth Circuit held that a ship owner had a lien on each cargo carried for all demurrage charges incurred during the course of its carriage. The court noted that "[s]uch a lien arises by force of law and is present unless expressly waived." *Id.* (*citing The Bird of Paradise*, 72 U.S. (5 Wall.), 545, 554 (1866)); *see also* Federal Bills of Lading Act, 49 U.S.C. §§ 80101 *et seq.*

Given that the Cargo was secured by possessory maritime liens created by the Federal Maritime Lien Act, the elements of section 547(b)(5) of the Bankruptcy Code cannot be satisfied. MSC had the right to refuse to release the Cargo to the Debtors unless payment for the Cargo, freight, demurrage and other carrying charges was received. Specifically, MSC did not receive more by the Alleged Transfers than it would have received in a chapter 7 liquidation.

As is clear from the Bills of Lading and maritime law, the Alleged Transfers were secured by possessory contractual and maritime liens. Therefore, MSC was a secured creditor, and the payments were not preferential. Accordingly, this Court should dismiss the First Cause of Action of the Complaint with prejudice.

### 4. The Release of Liens in Exchange for the Alleged Transfers Were Contemporaneous Exchanges for New Value

Regardless of whether this Court determines that the Plaintiff has satisfied its *prima facie* case under section 547(b) of the Bankruptcy Code, the First Cause of Action of the Complaint should nonetheless be dismissed because MSC has a complete defense pursuant to section 547(c)(1) of the Bankruptcy Code. The "contemporaneous exchange" defense is governed by section 547(c)(1) of the Bankruptcy Code, which states as follows:

(c) The trustee may not avoid under this section a transfer—

(1) to the extent that such transfer was—

(A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor; and

(B) in fact a substantially contemporaneous exchange.

11 U.S.C. § 547(c)(1).

Upon receiving the Alleged Transfers, MSC released the Cargo, thereby releasing the possessory maritime and contractual liens upon the Cargo. This exchange was intended by the Debtors and MSC to be a contemporaneous exchange for new value given to the Debtors, and each Transfer was in fact a substantially contemporaneous exchange. The United States Court of Appeals for the Third Circuit has determined that a release of a *lis pendens* in exchange for a payment constitutes a contemporaneous exchange pursuant to 11 U.S.C. § 547(c)(1), thus serving as a complete defense to a trustee's avoidance powers under section 547(b). *Lewis v. Diethorn*, 893 F.2d 648, 650 (3d Cir. 1990). Further, the United States Court of Appeals for the Eighth Circuit has determined that the release of a lien in exchange for a payment constitutes a contemporaneous exchange, such that the payment is not recoverable as a preferential transfer. *See Velde v. Kirsch,* 543 F.3d 469 (8th Cir. 2008) (bank's release of liens on debtor's assets constituted a contemporaneous exchange of new value). Here, the Debtors benefitted by the exchange because the liens on the Cargo were relinquished and possession of the Cargo was transferred to the Debtors or their consignees. Further, the release of the liens on the Cargo and the transfer of possession of the Cargo occurred simultaneously, and such occurrence was intended because the parties contracted for such terms in the Bills of Lading.

Accordingly, MSC has a complete defense to the First Cause of Action of the Complaint pursuant to section 547(c)(1) of the Bankruptcy Code.

## VII. THE SECOND CAUSE OF ACTION FAILS BECAUSE THE DEBTORS RECEIVED REASONABLY EQUIVALENT VALUE FOR THE ALLEGED TRANSFERS

The Second Cause of Action for fraudulent transfers pursuant to Bankruptcy Code Section 548 must be dismissed because the Debtors received reasonably equivalent value for the Alleged Transfers.

The Complaint fails to allege that MSC did not provide the services for which it allegedly received the Alleged Transfers. Since MSC provided the services pursuant to the Service Contract, the Bills of Lading and the Tariff, the amount that MSC received in exchange for the services was a reasonably equivalent value. Therefore, the Alleged Transfers could not have been constructively fraudulent transfers. Thus, the Second Cause of Action for fraudulent transfers must be dismissed for failure to state a claim upon which relief may be granted.

## VIII. THE THIRD CAUSE OF ACTION FAILS BECAUSE THERE IS NO ALLEGATION OF ANY POST-PETITION TRANSFERS

The Third Cause of Action, under Section 549 of the Bankruptcy Code for any unauthorized post-petition transfers, fails because there is no evidence in the Complaint of any post-petition transfers.

According to the Complaint, the Debtors filed for bankruptcy on April 16, 2009. *See* Compl. ¶ 8. Exhibit A to the Complaint lists the dates of payments of the Alleged Transfers. There are no transfers listed for the post-petition period. Therefore, the Third Cause of Action must be dismissed for failure to state a claim upon which relief may be granted.

## IX. THE FOURTH CAUSE OF ACTION FAILS BECAUSE PLAINTIFF HAS NOT ESTABLISHED AN UNDERLYING AVOIDABLE TRANSFER

Section 550 of the Bankruptcy Code sets forth the liability of a transferee of a transfer that is avoided under, *inter alia*, sections 547, 548, and 549 of the Bankruptcy Code. *See In re Wedtech Corp.*, 165 B.R. 140, 145 (Bankr. S.D.N.Y. 1994) ("By its own terms ... [section] 550 is

available only "to the extent that a transfer is avoided."); *Official Unsecured Creditors Comm. of Sufolla, Inc. v. U.S. Nat'l Bank (In re Suffola, Inc.)*, 2 F.3d 977, 980 (9th Cir. 1993) (section 550(a) identifies party responsible for repayment of preference after one first has been established under section 547(b)). For the reasons set forth herein, since MSC is not liable under section 547 of the Bankruptcy Code, Plaintiff cannot recover under section 550 of the Complaint. Therefore, the Complaint must be dismissed in its entirety.

## X.   THE FIFTH CAUSE OF ACTION FAILS BECAUSE PLAINTIFF HAS NOT ESTABLISHED AN AVOIDABLE TRANSFER THAT WOULD FORM THE BASIS TO DISALLOW ANY CLAIMS

The Fifth Cause of Action to disallow claims pursuant to Bankruptcy Code Section 502 fails because even assuming, *arguendo*, that MSC has any claims against the Debtors' estates, there are no avoidable transfers for the reasons stated herein. Therefore, there is no basis to disallow any MSC claims against the Debtors' estates.

## XI.   THE SIXTH CAUSE OF ACTION FAILS BECAUSE PLAINTIFF HAS NOT ESTABLISHED AN AVOIDABLE TRANSFER THAT WOULD FORM THE BASIS FOR SETOFF OR RECOUPMENT

The Sixth Cause of Action for Setoff and Recoupment must be dismissed because MSC does not owe any debt to the Debtors, since none of the transfers are avoidable. Therefore, there is no basis for setoff or recoupment.

## RESERVATION OF RIGHTS

MSC hereby reserves all of its rights to assert additional pertinent defenses with respect to this matter, including, *inter alia*, that it did not receive all of the Alleged Transfers asserted in the Complaint.

## CONCLUSION

Based on the foregoing reasons and authorities, MSC submits that the Complaint and the

Adversary Proceeding should be dismissed with prejudice.

Dated: May 17, 2011
      Wilmington, Delaware

**CIARDI CIARDI & ASTIN**

*[signature]*

Daniel K. Astin (No. 4068)
Joseph J. McMahon, Jr. (No. 4819)
919 N. Market St., Suite 700
Wilmington, DE 19801
Tel: (302) 658-1100
Fax: (302) 658-1300
dastin@ciardilaw.com
jmcmahon@ciardilaw.com

and

Rick A. Steinberg, Esq. (RS-7396)
(Admitted *pro hac vice*)
100 Church Street, 8th Floor
New York, New York 10007
Tel: (646) 485-0605
Fax: (646) 688-4385
rsteinberg@ciardilaw.com

*Counsel for Mediterranean Shipping Co., et al.,*
*Defendants*